```
Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Ogonna M. Brown, Esq. (NV Bar No. 7589)           E-filed on: July 18, 2018
Email: obrown@nevadafirm.com
Mary Langsner, Ph.D. (NV Bar No. 13707)
Email: mlangsner@nevadafirm.com
HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
```
*Attorneys for Metro MAGA, LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>THE SPRINGS BUILDING, LLC,<br><br>    Debtor. | Case No. BK-S-18-12320-LEB<br>Chapter 11<br><br>**DECLARATION OF OGONNA M. BROWN, ESQ. IN SUPPORT OF MOTION TO DISMISS; IN THE ALTERNATIVE, MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) AND WAIVE THE 14-DAY STAY UNDER FED. R. BANKR. P. 4001(a)(3)**<br><br>Judge: Hon. Laurel E. Babero |

I, Ogonna M. Brown, Esq., declare and state as follows:

1. I am an attorney duly licensed to practice law in the State of Nevada.

2. I am a shareholder with the law firm of Holley Driggs Walch Fine Wray Puzey & Thompson ("Holley Driggs"), counsel of record for Metro MAGA, LLC ("Movant" or alternatively, "Secured Creditor"), successor-in interest to Western Alliance Bank doing business as Bank of Nevada ("Bank").

3. I have personal knowledge of the facts set forth herein.

4. I make this Declaration in support of Movant's Motion to Dismiss; In the Alternative, Motion for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Waive the 14-Day Stay Under FED. R. BANKR. P. 4001(a)(3) (the "Motion").

5. I have personal knowledge of the facts set forth in this Declaration and if called as a witness could and would competently testify concerning these facts.

6. Central to Movant's dispute with debtor The Springs Building, LLC ("Debtor") are three parcels of real property: the parcel of real property located at Bermuda and Warm Springs Commercial Ctr, Plat Book 79 Page 65, PT Lot 1, at 319 Warm Springs Road, Las Vegas, Nevada, identified as A.P.N. 177-09-514-009 ("Warm Springs Property"); the parcel of real property located at 808 5th Street, Boulder City, Nevada, 89005, identified as A.P.N. 186-09-610-034 (the "Boulder City Property"); and the parcel of real property located at 40588 Ironwood Drive, Big Bear Lake, California, 92315, identified as A.P.N. 0308-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 (the "California Property").[1]

**341 MEETING OF CREDITORS**

7. On May 31, 2018, I attended the 341 Meeting of Creditors for the Debtor, during which time Ronald Robinson, the Debtor's Managing Member, as Trustee of the Scotsman Trust Dated June 1, 1996 (the "Scotsman Trust"), testified on behalf of the Debtor.

8. Upon information and belief, Mr. Robinson is a beneficiary of The Scotsman Trust.

9. During the 341 Meeting, I inquired regarding the tenants of each of the respective Properties, the Debtor's sources of income, and the Debtor's ability to pay for insurance and real property taxes for the three Properties identified in the Debtor's Schedules A/B.

10. As of the date of this declaration, the Debtor has failed to provide the lender with proof of insurance for any of the three (3) Properties, and as a result, the Secured Creditor is not adequately protected.

11. Mr. Robinson testified that the Debtor is delinquent on the real property taxes for the Warm Springs Property, but was unable to confirm whether or not the real property taxes were current for the Boulder City Property and California Property as of May 31, 2018, further jeopardizing Debtor's collateral in the Properties.

---

[1] The Warm Springs Property, the Boulder City Property and the California Property shall collectively be referred to as the "Properties" hereafter.

**NO RENT FROM ANY OF THE THREE PROPERTIES**

12. According to Mr. Robinson's testimony, his ex-wife lives at the Boulder City Property, and the Boulder City Property does not generate any income.

13. Mr. Robinson further testified that the California Property is used as a vacation home for his children and grandchildren, and that the California Property likewise does not generate any income.

14. In connection with the Warm Springs Property, at the 341 Meeting, Mr. Robinson testified that an architecture company previously occupied the Warm Springs Property for years, but then downsized and eventually vacated.

15. According to Mr. Robinson's testimony relating to the leases for the Warm Springs Property, an Indian tech company ("Tech Company") was required to pay rent in the amount of $21,000 a month, that tenant had been on the Warm Springs Property for eight (8) months, and had had six (6) months of free rent. As of the date of the 341 Meeting of Creditors on May 31, 2018, Mr. Robinson testified that the Tech Company was two (2) months behind on the lease payment, since April 1, 2018.

16. As a result of the Tech Company's arrearage, Mr. Robinson, on behalf of the Debtor, issued a 30-day notice on the Tech Company, and, absent payment from the Tech Company by May 31, 2018, the Debtor was entitled to evict the Tech Company. Mr. Robinson testified that he did not realize that only a 5-day notice was required to be served upon the Tech Company, and that instead he served the 30-day notice.

17. According to Mr. Robinson's testimony related to leases for the Warm Springs Property, Virtual Communications, the other tenant, was on a month-to-month tenancy for $18,500 a month, but Virtual Communications has never once paid rent in the years that it has occupied the Warm Springs Property. However, Debtor and Virtual Communications had entered into a lease to commence on or about January 1, 2015, a true and correct copy of which is attached hereto as **Exhibit "1".**

18. At the 341 Meeting of Creditors on May 31, 2018, Mr. Robinson testified that, instead of paying rent to the Debtor, Virtual Communications transferred to the Scotsman Trust

11 million shares in Virtual Communications stock, which constitutes approximately 40% of the company's shares. Mr. Robinson testified that Virtual Communications filed for bankruptcy the week of May 14, 2018, as a pre-packaged Chapter 11 bankruptcy case.

19. On December 6, 2017, I instructed a runner from Holley Driggs to deliver the Notification to Pay Rents to Person Other Than Landlord ("<u>Notice to Pay Rents</u>"), to Virtual Communications Corporation at the Warm Springs Property, as the Secured Creditor was entitled to turn over the rents as a result of its Assignment of Rents and Debtor's default under the Loan Documents.

20. When my office requested a signature of receipt, my office was informed that any delivery of legal documents needed to be coordinated with "Ron" who was in charge of the subtenant Virtual Communications Corp. No last name and no contact information was provided to the runner regarding "Ron", but upon information and belief, "Ron" is Ronald Robinson. A true and correct copy of the Notice to Pay Rents is attached hereto as **Exhibit "2"**.

21. Later that week, Secured Creditor delivered, via its counsel, the Notice to Pay Rents without signature from anyone at Virtual Communications, and likewise mailed the Notice to Pay Rents to Virtual Communications via regular and certified mail.

22. Virtual Communications never responded to the Notice to Pay Rents and never remitted any lease payments to the Secured Creditors as a result of the Notice to Pay Rents.

23. As of the date of this declaration, I have no information regarding whether or not the Debtor has evicted the Tech Company from the Warm Springs Property for failure to pay any rent for occupying the Warm Springs Property.

24. During the 341 Meeting of Creditors, Debtor agreed to amend Schedule G to reflect executory contracts, including, but not limited to, the leases with tenants of the Warm Springs Property.

25. To date, the Debtor has failed to file any such amendment to its Schedule G of the Debtor's bankruptcy schedules.

**SCOTSMAN TRUST FUNDED $100,000 PURCHASE TRANSACTION FOR COHEN-JOHNSON FIRM**

26. On August 24, 2017, the law firm of Cohen Johnson Parker Edwards wrote a letter to Debtor's principal, Ronald Robinson ("Mr. Robinson"), regarding the sale of the Warm Springs Property, to close pursuant to the Sale and Purchase Agreement dated August 25, 2017, between Debtor, as Seller, and Cohen-Johnson, LLC (the "Buyer" or alternatively, "Cohen-Johnson Firm"), and executed on August 24, 2017, by Buyer and The Springs Building, LLC as seller (the "Purchase Agreement"), for the purchase of the Warm Springs Property in the amount of $4.1 million, and a $100,000.00 earnest money deposit. A true and correct copy of the letter is attached hereto as **Exhibit "3"**.

27. In connection with the a sixty-day extension (the "Extension") of the August 31, 2017 maturity date of the Loan between Debtor and the Bank (which Loan was comprised of Note A in the original principal amount of $4,000,000.00 and Note B in the original principal amount of $1,743,655.65, plus underlying obligations evidenced by the Notes themselves), to an extended maturity date of October 31, 2017 (the "Extended Maturity Date"), Debtor agreed to grant the Bank a collateral assignment of the $100,000.00 good faith deposit related to the Purchase Agreement (the "Deposit"), and in the event purchase of the Property failed to timely close by the Extended Maturity Date, the Cohen-Johnson Firm would not be entitled to a refund of the good faith Deposit; such Deposit was supposed to be forwarded to the Bank to be applied to all amounts owing under the Loan.

28. In conjunction with the Extension, the Debtor likewise requested a Discounted Payoff (the "DPO") of the Loan in the amount of $4,000,000.00, which the Bank approved. The Bank granted both the Extension and the DPO on the condition that the Loan would be paid by the Extended Maturity Date. A true and correct copy of the Extension Documents are attached hereto as **Exhibit "4"**.

29. Despite months and months of effort by the Bank to enforce the Assignment of Proceeds ("Assignment"), pursuant to which Debtor and the Cohen-Johnson Firm had agreed to turn over to the Bank the Deposit in the event Debtor failed to timely close the sale of the Property, Debtor and the Cohen-Johnson Firm acted in concert and failed and refused to release

the $100,000.00 earnest money Deposit to the Bank as agreed under the Assignment. A true and correct copy of the Assignment is attached hereto as **Exhibit "5"**.

30. On November 13, 2017, the Secured Creditor served upon Debtor a letter regarding its default of the Extension because the sale of the Property under the Purchase Agreement failed to timely close, and the Deposit was not remitted to the Bank as agreed. A true and correct copy of the default letter is attached hereto as **Exhibit "6"**.

31. After nearly four (4) months of demands by the Secured Creditor to enforce the Assignment, on or around February 9, 2018, I reached Attorney Stan Johnson via telephone regarding the commencement of litigation against the Cohen-Johnson Firm, Debtor, and the Title Company, during which time Attorney Johnson admitted the following:

   a. The borrower (likely through the Scotsman Trust) "loaned" the money to Cohen-Johnson, LLC to facilitate the purchase of the Property; and

   b. Mr. Johnson had known Mr. Robinson, the principal of Debtor, for one (1) year and was doing him a favor.

32. I warned Attorney Johnson that the Secured Creditor would seek fees and costs for bringing litigation against the Cohen-Jonson Firm, Debtor, and the Title Company, and likewise raised with Attorney Johnson the conflict of interest he and his firm had by representing Debtor to proceed in bad faith and in breach of the Assignment, and that the Cohen-Johnson Firm committed ethical violations to aid and assist Debtor in committing a breach, as both were in breach of the Assignment. I also discussed Debtor's continued refusal to comply with the Bank's requests to turn over the lease payments derived from the Property to which the Bank was entitled pursuant to the Assignment of Rents.

33. On February 9, 2018, the Cohen-Johnson Firm, through its manager H. Stan Johnson, executed the Instructions Release of Funds Prior to Close for the release of $100,000.00 to the Bank. A true and correct copy of the Release is attached hereto as **Exhibit "7"**.

34. In connection with the $100,000 escrow Deposit, I questioned Mr. Robinson during the 341 Meeting of Creditors, regarding the source of the $100,000 to fund escrow relating to the Cohen-Johnson Firm's efforts to purchase the Warm Springs Property. Mr.

1  Robinson claimed he personally paid the escrow deposit. However, prior information has led me to believe that the Scotsman Trust funded the $100,000 escrow Deposit.

35. The Office of the United States Trustee requested that the Debtor amend its Statement of Financial Affairs Item #3, which improperly reflects that the Debtor paid the $100,000 escrow Deposit for the purchase of the Warm Springs Property, when in fact Mr. Robinson testified at the 341 Meeting of Creditors that the funds were never paid by the Debtor.

**SCOTSMAN TRUST AND TITLE TO BOULDER CITY PROPERTY**

36. On April 20, 2018, a Notice of Trustee's Sale recorded as Clark Official Records Instrument No. 201804200002385, scheduling a foreclosure sale of the Warm Springs Property and the Boulder City Property for May 14, 2018, at 10:00 a.m. A true and correct copy of the Notice of Trustee's Sale attached hereto as **Exhibit "8"**.

37. A noticed foreclosure sale on the California Property had also been scheduled, for April 26, 2018, at 12:00 p.m. pursuant to a separate Notice of Trustee's Sale. A true and correct copy of the California Property Notice of Trustee's Sale is attached hereto as **Exhibit "9"**.

38. On April 25, 2018 ("Petition Date"), Debtor filed a skeletal voluntary chapter 11 petition ("Petition") [ECF No. 1][2]. Debtor would later file a Statement Regarding Authority to Sign and File Petition, attached to which was an unsigned corporate resolution dated April 25, 2018 [ECF No. 24].

39. On May 30, 2018, the thirty-fifth day in the Case, Debtor filed Schedules and Statements [ECF Nos. 18-21]. Debtor scheduled a "Fee simple" interest in the Warm Springs Property, California Property, and Boulder City Property, identifying a value for each as "Unknown" [ECF No. 19 pp. 3-4 of 11]. Later, Debtor would amend Schedule A/B only to assert an amended value of Debtor's interest in all properties as no longer "Unknown" [ECF No. 26].

40. Debtor scheduled no unsecured nonpriority creditors [ECF No. 19 pp. 8-9 of 11] but scheduled various secured debts owed to [ECF No. 19 pp. 6-7 of 11]. An amended Schedule D, filed June 8, 2018, did not alter these representations [ECF No. 26 pp. 5-6 of 6].

---

[2] All references to "ECF No." are to the numbers assigned to the documents filed in Debtor's bankruptcy case ("Case") as they appear on the docket maintained by the Clerk of Court of the U.S. Bankruptcy Court for the District of Nevada.

13055-01/2072017_2.docx

41. At the 341 Meeting of Creditors, I asked Mr. Robinson who owned the Warm Springs Property, Boulder Property, and California Property, and he testified that the Debtor owns all three properties. However, the Deeds of Trust for the Big Bear Property and Boulder City Property are executed by the Scotsman Trust, and therefore I do not believe those properties are an asset of the bankruptcy estate under 11 U.S.C. § 541, and therefore the bankruptcy filing should not effectuate to stay the foreclosure sale of either of these properties under 11 U.S.C. § 362.

42. Although identified in Debtor's Schedules [ECF Nos. 19 and 26], the title to the California Property is in the name of an insider, the Scotsman Trust and is not titled in the Debtor's name. A true and correct copy of Scotsman Trust Property Details report is attached hereto as **Exhibit "10"**.

43. The Boulder City Property also appears to be an asset of the Scotsman Trust, although Debtor's principal Mr. Robinson caused the Scotsman Trust to transfer the Boulder City Property into Debtor's name (the "Wrongful Transfer"), which Wrongful Transfer was carried out in violation of the applicable deed of trust and was memorialized in a Grant, Bargain and Sale Deed that recorded **postpetition** in the Clark Official Records on April 27, 2018, as Instrument No. 20180427-0000027 (the "Postpetition Transfer Deed"); as such the Wrongful Transfer is void. A true and correct copy of the Postpetition Transfer Deed is attached hereto as **Exhibit "11"**.

44. On June 13, 2018, the Court denied the employment application of Cohen Johnson Parker Edwards as Debtor's bankruptcy counsel [ECF No. 29], which Application for Authorization to Retain and Employ Counsel Under General Retainer [ECF No. 10] to employ the law offices of Cohen Johnson Parker Edwards as bankruptcy counsel had been previously filed with the Court on May 9, 2018.

45. As of the filing of this Declaration, Debtor is a limited liability company debtor-in-possession without counsel that has appeared and has sought approval from the Court for its employment in this Case.

46. As of the filing of this Declaration, Debtor has not filed any monthly operating reports in the bankruptcy Case.

47. As of the filing of this Declaration, Debtor has not amended its Schedules and Statements as requested by the Office of the United States Trustee, nor, upon information and belief, has the Debtor provided the Office of the United States Trustee with the documents requested at the 341 Meeting of Creditors held over a month and a half ago.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 13th day of July 2018.

/s/ Ogonna M. Brown
OGONNA M. BROWN, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Holley Driggs Walch Fine Wray Puzey & Thompson, and that on the 18th day of July 2018, I caused to be served a true and correct copy of the DECLARATION OF OGONNA M. BROWN, ESQ. IN SUPPORT OF MOTION TO DISMISS; IN THE ALTERNATIVE, MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d) AND WAIVE THE 14-DAY STAY UNDER FED. R. BANKR. P. 4001(a)(3) in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☒ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

THE SPRINGS BUILDING, LLC  
Attn: Officer, Agent, Managing Agent  
319 E. WARM SPRINGS ROAD, Ste. 100  
LAS VEGAS, NV 89123  

Nikoll Nikci, Esq.  
Michael F. Bohn, Esq., Ltd.  
2260 Corporate Circle, Suite 480  
Henderson, NV 89074  

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

/s/ *signature*

An employee of Holley Driggs Walch Fine Wray Puzey & Thompson

13055-01/2072017_2.docx